UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| JOEL KOSTYO, | ) | CASE NO. 1:11 CV 2321 |
| | ) | |
| Plaintiff, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| UNITED STATES OF AMERICA, | ) | AND ORDER |
| | ) | |
| Defendant. | ) | |

*Pro se* Plaintiff Joel Kostyo filed this action under the Federal Tort Claims Act, 28 U.S.C. § 1346 and § 2671 against the United States. In the Complaint, Plaintiff alleges that necessary medical procedures were delayed after he injured his shoulder. He seeks monetary damages.

## Factual Background

Mr. Kostyo was transferred to Elkton Federal Correctional Institution ("FCI Elkton") on May 3, 2006. He claims that there was no bed available for him at that time and he was temporarily housed in the Special Housing Unit ("SHU"). Soon after his arrival, he was being handcuffed by one of the officers. He claims the handcuffs were designed for a smaller person. To secure his hands, the officers hyper-extended his arms backwards. Mr. Kostyo contends he heard a pop and felt significant pain in his left shoulder.

Mr. Kostyo first reported to sick call for the shoulder pain on June 1, 2006. He described the incident in the SHU and the resulting injury. He was given exercises to do to strengthen his shoulder. He continued to complain of shoulder pain in July and August 2006. He was prescribed Motrin for the pain, and x-rays were ordered. The x-rays showed no damage. He sent a communication to Mr. Harvey, the FCI Elkton Clinical Director. He indicated he was still in pain and the medication was not resolving the problem. Mr. Harvey advised him to continue to perform

the exercises. Mr. Kostyo claims the exercises exacerbated the problem, and decided to discontinue that course of treatment.

In March 2007, Mr. Kostyo returned to the medical department complaining of pain in his left shoulder. The physician's assistant gave him an injection of Toradol and placed a request for an MRI with the Utilization Review Committee ("URC"). The URC denied the request and ordered that a second set of x-rays be taken of Mr. Kostyo's shoulder. These x-rays were also negative. The MRI was then performed in May 2007, which revealed an abnormal amount of fluid or swelling was present in the shoulder joint, a small amount of fluid extended into the space between the shoulder blade and the tendon, and arthritis appeared in the shoulder joint where the scapula and the clavicle meet. A small tear was suspected in the supraspinatus tendon. Upon receiving a copy of the MRI results, Mr. Kostyo asked Mr. Harvey about his options for treatment. Mr. Harvey told him Motrin was the only option available as the x-rays were negative. He did not mention the MRI results.

Mr. Kostyo returned to the medical department in July 2007 and was seen by physician's assistant Flatt. He indicates he was prescribed Proxicam in place of the Motrin. Mr. Kostyo inquired about possible surgery on his shoulder. He states Mr. Flatt replied that he had never seen rotator cuff surgery that achieved the result the patient expected. He stated that surgery was not always the answer and that Mr. Kostyo should give the medication time to work.

Nevertheless, Mr. Kostyo received approval from the URC to consult with an orthopedic surgeon. He met with Dr. Jurenovich on October 5, 2007. He claims the surgeon told him he had a rotator cuff tear which he felt would require surgery. The surgeon submitted several requests for approval of the procedure, but all requests were denied. The URC indicated that surgery was not clinically indicated.

When the third request was denied in 2008, Health Services Administrator J. Bunts met with Mr. Kostyo. He explained that the surgery requests were denied because the injury was not life

threatening, and that surgery was not always the right answer for this type of condition. He reiterated to Mr. Kostyo that even after surgery, patients still have pain and loss of movement. He was told that the medical department would continue to monitor his condition. Mr. Kostyo complained that a motion factor made the MRI difficult to read.[1] Mr. Bunts scheduled a second MRI.

A new clinical director, Dr. Siha, was hired at FCI Elkton in June 2008. Mr. Kostyo met with Dr. Siha on June 11, 2008. Dr. Siha prescribed range of motion exercises and a steroid. He indicated he would resubmit the request for surgery after a second MRI was taken and a consultation with Dr. Jurenovich was scheduled. The second MRI revealed a tear in a tendon. Mr. Kostyo had a second appointment with Dr. Siha on January 6, 2009, during which Dr. Siha agreed to submit a request to the URC for surgery. This request was approved.

The surgery took place on April 9, 2009. Dr. Jurenovich reported he discovered a large spur on the acromial portion of Mr. Kostyo's shoulder blade that was impinging on muscles and tendons. The bone spur was removed and his rotator cuff was repaired. Upon his release from the hospital, Mr. Kostyo was transferred to the Federal Medical Correctional Center in Devens Massachusetts ("FMC Devens") for physical therapy.

Mr. Kostyo continued in physical therapy from June 8, 2009 to June 24, 2010. During this time, another tear occurred. He experienced pain in the shoulder and asked to see an orthopedic physician. He was sent to the University Massachusetts Hospital and met with Dr. Brown and Dr. Plante. He was examined and given x-rays. He continued to be in pain after the visit and an MRI was taken of his shoulder. The physicians discussed the benefits and risks of surgery with Mr. Kostyo and indicated to him that he would likely never have a totally "normal" shoulder.

---

[1] A motion factor is a movement during the imaging process that blurs the image or otherwise renders it difficult to read. The movement can be caused by arterial pulsations, swallowing, breathing, peristalsis, or physical movement of a patient. *See* www.mritutor.org.

A second surgery was performed on the shoulder on March 17, 2011.  He contends he was later told by Dr. Brown that the damage was so extensive that the surgery took twice as long as expected.  After his release from the hospital, he began physical therapy at FMC Devens on April 14, 2011.  He was told on August 12, 2011 he would need eight more months of physical therapy.

## Procedural Background

Mr. Kostyo submitted an administrative tort claim to the Bureau of Prisons Northeast Regional Office on December 11, 2007.  He alleges that claim concerned the incident that occurred on in May 2006 in which shoulder was first injured.  He received a denial of his claim from the BOP on June 10, 2008.

Mr. Kostyo then filed a civil action in the United States District Court for the Northern District of Ohio on October 26, 2009.  *See Kostyo v. Harvey*, No. 1:09 CV 2509 (N.D. Ohio filed Oct. 26, 2009)(Gwin, J.).  In that action he asserted claims against FCI Elkton Clinical Director P. Harvey, M.D., Bureau of Prisons Regional Medical Director John Manetti, FCI Elkton Physician's Assistant ("PA") R. Meece, FCI Elkton PA J. Bunts, FCI Elkton PA Wayne Flatt, and FCI Elkton Warden J.T. Shartle under the Eighth Amendment.  He also filed a claim under the Federal Tort Claims Act.  *Id.*

 In a Memorandum of Opinion and Order dated February 18, 2010, United States District Judge James S. Gwin dismissed several of Mr. Kostyo's claims.  He found the claim under the FTCA to be untimely filed.  The statute of limitations for these actions requires that the claim be filed "within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented."  28 U.S.C. § 2401(b).  The Court found Mr. Kostyo's claim was filed eighteen months after he received his final notice from the Bureau of Prisons. Mr. Kostyo's Eighth Amendment claims against the Regional Medical Director, Dr. Manetti, and Warden Shartle were dismissed pursuant to 28 U.S.C. §1915(e).  The case proceeded solely on his Eighth Amendment claims against P. Harvey, M.D., R. Meece, J. Bunts,

and Wayne Flatt.

Mr. Kostyo filed an Amended Complaint in that action on May 11, 2010 to update his allegations to include his progress in physical therapy and his re-injury of the shoulder in 2010. Defendants responded with a Motion to Dismiss or in the alternative, a Motion for Summary Judgment on June 1, 2010. The parties consented to the jurisdiction of the Magistrate Judge on July 30, 2010.

United States Magistrate Judge Kenneth S. McHargh issued a Memorandum and Order on September 8, 2010 dismissing the remainder of Plaintiff's claims. The Court determined that the physicians were immune from damages in *Bivens* actions because they are considered Public Health Service Officers. He also determined Mr. Kostyo failed to demonstrate that the Defendants were deliberately indifferent to his serious medical needs to sustain a claim under the Eighth Amendment. Mr. Kostyo did not appeal that decision.

Instead, Mr. Kostyo submitted a second Administrative Tort Claim with the Bureau of Prisons on November 2, 2010. Although he lists the date of the incident upon which the claim is based as April 9, 2009, the date of his first surgery, the documents he attaches to his claim clearly indicate the claim is based on the medical care he received prior to his first surgery. The Bureau of Prisons denied the claim on May 23, 2011 stating he had received appropriate medical care in accordance with community standards.

Mr. Kostyo has now filed the present action solely under the FTCA. He asserts five basic negligence claims.[2] First, he contends the Bureau of Prisons failed to order a timely MRI in 2007 which increased his risk of permanent injury. Second, he claims the Bureau of Prisons failed to reasonably respond to the results of his first MRI. Third, he contends the Bureau of Prisons failed to timely order a second MRI, and failed to promptly refer him to an orthopedic physician when he

---

[2] Mr. Kostyo lists eight negligence claims; however, three of them are redundant and simply restate other claims he already asserted.

first requested the visit in August 2007. Fourth, he indicates he made three requests for surgery which were initially denied in favor of other less invasive procedures. Finally, he indicates the Bureau of Prisons was negligent in denying his transfer to the Federal Medical Center before his first surgery.

## Standard of Review

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court is required to dismiss an *in forma pauperis* action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact.[3] *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). A claim lacks an arguable basis in law or fact when it is premised on an indisputably meritless legal theory or when the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327. A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the Complaint are true. *Bell Atl. Corp.*, 550 U.S. at 555. The Plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949. A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this

---

[3] An *in forma pauperis* claim may be dismissed *sua sponte*, without prior notice to the plaintiff and without service of process on the defendant, if the court explicitly states that it is invoking section 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute. *McGore v. Wrigglesworth*, 114 F.3d 601, 608-09 (6th Cir. 1997); *Spruytte v. Walters*, 753 F.2d 498, 500 (6th Cir. 1985), *cert. denied*, 474 U.S. 1054 (1986); *Harris v. Johnson*, 784 F.2d 222, 224 (6th Cir. 1986); *Brooks v. Seiter*, 779 F.2d 1177, 1179 (6th Cir. 1985).

pleading standard. *Id.* In reviewing a Complaint, the Court must construe the pleading in the light most favorable to the Plaintiff. *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir.1998).

## Analysis

The United States, as a sovereign, is immune from suit unless it explicitly waives its immunity. *United States v. Sherwood*, 312 U.S. 584, 590–91 (1941). By enacting the FTCA, Congress waived the United States' sovereign immunity under very limited circumstances for claims against the federal government arising from torts committed by federal employees who are acting within the scope of their employment. 28 U.S.C. §§ 1346(b)(1), 2679(d)(1); *United States v. Orleans*, 425 U.S. 807 (1976). Congress defined the exact terms and conditions upon which the government may be sued and the terms of the United States' consent define the parameters of federal court jurisdiction to entertain suits brought against the United States. *United States v. Orleans*, 425 U.S. at 814; *Honda v. Clark*, 386 U.S. 484, 501 (1967).

The parameters placed on these tort claims dictate that they "shall forever be barred unless...presented in writing to the appropriate Federal agency within two years after such claim accrues." 28 U.S.C. § 2401(b). The timely filing of an administrative claim is a requirement of the FTCA. If the administrative requirements of the FTCA have not been fulfilled, the case must be dismissed for lack of jurisdiction. *Dolan v. U.S.*, 514 F.3d 587, 593 (6th Cir. 2008). This Court cannot extend the waiver of immunity beyond what Congress intended. *United States v. Kubrick*, 444 U.S. 111, 118 (1979). Because section 2401(b) is a condition of the United States' waiver of immunity, it must be interpreted solely by reference to federal law.

In determining whether an action has been filed within the two-year statute of limitations, the threshold inquiry is when the cause of action accrued. The Supreme Court of the United States has held that a claim "accrues" for purposes of the two-year statute of limitations, when the Plaintiff knows both of the existence and the cause of the injury. *Kubrick*, 444 U.S. at 122–25. Accrual need

not wait for "awareness by the plaintiff that his injury was negligently inflicted." *Id*. at 123.

Mr. Kostyo's claims are untimely filed. The statute requires that before a party may bring such an action, the Plaintiff must first present the claim to the appropriate agency and then file suit within two years of the events giving rise to the claims. Although on his administrative tort claim, Mr. Kostyo lists the date of the incident upon which the claim is based as April 9, 2009, the date of his first surgery, the incidents for which he seeks damages occurred in 2007 and 2008, one to two years prior to the surgery. Plaintiff was well aware of both the existence and the cause of his injury at that point. The statute of limitations for these claims expired before Mr. Kostyo even submitted the Administrative Tort Claim in November 2010. The fact that Mr. Kostyo did not think to file a second claim under the FTCA for his medical care until judgment was entered in favor of the Defendants in his civil rights action in 2010, does not extend or toll the statute of limitations to file his claim.

Moreover, had Mr. Kostyo timely pursued his administrative tort claim, he could have presented his claim in first action before this Court. The doctrine of *res judicata* dictates that a final judgment on the merits of a claim precludes a party from bringing a subsequent lawsuit on the same claim or from raising a new defense to defeat the prior judgment. *Gargallo v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 918 F.2d 658, 660 (6th Cir. 1990). It bars relitigation of every issue actually brought before the court and every issue or defense that should have been raised in the previous action. *Id.* The purpose of this doctrine is to promote the finality of judgments and thereby increase certainty, discourage multiple litigation, and conserve judicial resources. *Westwood Chemical Co. v. Kulick*, 656 F.2d 1224 (6th Cir. 1981). A subsequent action will be subject to a *res judicata* bar only if there is an identity of the facts creating the right of action and of the evidence necessary to sustain each action. Both of these requirements are met in this case.

Plaintiff's first civil action was filed on October 26, 2009, six months after the first surgery. The Court dismissed some of his claims, including his first claim under the FTCA on February 18,

2010. He filed an extensive Amended Complaint on May 11, 2010. It did not include any new claims under the FTCA, and no new administrative claims had been submitted, despite the fact that it had been over a year since his surgery and over three years since the incidents in question occurred. Mr. Kostyo filed an extensive response to the Defendants' Motion to Dismiss, which included 54 exhibits, on July 12, 2010. He did not assert his claims in that filing. The Court issued its Memorandum of Opinion and Order dismissing the case on September 08, 2010. Only then did Plaintiff seek to pursue his additional claims under the FTCA based on the same set of facts. There is no reason why Plaintiff could not have pursued his administrative remedies within the time period set forth in the statute and brought his claims in the first action based on this set of facts against these Defendants. Having been unsuccessful in his first law suit, Mr. Kostyo is attempting to litigate this matter for a second time under a new legal theory. He is barred from doing so.

## Conclusion

Accordingly, this action is dismissed under 28 U.S.C. §1915(e). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[4]

IT IS SO ORDERED.

*/s/Dan Aaron Polster 1/10/12*
DAN AARON POLSTER
UNITED STATES DISTRICT JUDGE

---

[4] 28 U.S.C. § 1915(a)(3) provides:

An appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith.